UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON
CRIMINAL NO. 5:23-CR-110-KKC-MAS
***ELECTRONICALLY FILED***

UNITED STATES OF AMERICA            PLAINTIFF

v.       **MOTION FOR JUDGMENT FOR ACQUITTAL**

*OR, IN THE ALTERNATIVE*

**MOTION FOR NEW TRIAL**

KEITH LAMONT STALLWORTH            DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes the Defendant, Keith Lamont Stallworth, through counsel, and pursuant to FRCP 29(c)(2), moves this Court to set aside the Jury's Verdict on Count 4/Question 2(a) of the Jury Verdict and enter an Order finding that there was insufficient evidence to find that Defendant knew the subject firearm was a machinegun. Jury Verdict, DE 111, Page 551. In the alternative, pursuant to FRCP 33(a). In support, Defendant states as follows:

## I. INTRODUCTION

On August 27, 2025, the jury returned a guilty verdict on Count 4 of the First Superseding Indictment. Jury Verdict, DE 111, Page 551. Specifically under Question 2(a), the jury found that Defendant "knew the firearm had the characteristics of a machinegun." Id.; *see also* Jury Instructions, DE 109, Page ID 520-21, Instructions No. 13 & 14. However, based upon the evidence at trial, no rational jury could have found Defendant knew the subject weapon was a machine gun. Therefore, the jury's verdict regarding Question 2(a) must be set aside.

Alternatively, if the Court denies the motion for Judgment of Acquittal, Defendant moves the Court for a new trial. Prior to trial, the Court ruled that the jury was not required to find

1

Defendant knew the subject weapon was a machinegun. Order, DE 99, Page ID 456-58. As a result, Defendant and undersigned counsel presented a defense based upon this ruling. However, after the close of evidence and hearing Defendant's directed verdict motion, the Court announced that it would require the jury to find that Defendant knew the subject gun was a machinegun for the 30-year statutory minimum charge. Day 2 Transcript, DE 122, Page ID 855. Unfortunately, the jury found Defendant had the requisite knowledge per Question 2(a) of the Verdict Form. Verdict Form, DE 111, Page ID 551.

Under these circumstances, justice requires a new trial. As will be explained below, Defendant presented a case based upon instructions that were significantly different than those that were actually presented. One that Defendant would not have sought if he knew, prior to trial, that knowledge was required. As a result, Defendant suffered significant prejudice at trial, justifying a new trial.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### a. Pre-Trial

On February 1, 2024, a grand jury returned its First Superseding Indictment in this matter. First Superseding Indictment, DE 29, Page ID 90-97. Under Count 4, Defendant was charged with possessing a machinegun in furtherance of drug trafficking, in violation of 18 USC § 924(c)(1)(A). Id. at Page ID 92. This charge carried a 30-year mandatory minimum. Id. at Page ID 98.

On September 10, 2024, Defendant filed a legal memorandum regarding Count 4. Defendant's Memorandum, DE 73, Page ID 288. Within it, Defendant argued that the jury must find that he knew that the subject handgun was a machinegun to impose the 30-year mandatory minimum sentence under Count 4. Id., generally. The government opposed this position and,

conversely, argued that this requisite knowledge was not required. <u>Government's Proposed Jury Instructions</u>, DE 74, Page ID 335-344. Ultimately, the Court found that "the government need only prove beyond a reasonable doubt that the firearm in Count 4 is a 'machinegun.'" <u>Order</u>, DE 99, Page ID 457. Consequently, the Court found that "the defendant's knowledge of the characteristics that made the firearm a machinegun is not an element of the offense charged in Count 4." <u>Id.</u>

As a result, in reliance of this decision, Defendant prepared a possession defense based upon this ruling. Specifically, Defendant prepared a defense show that the weapon recovered at the scene was not the one present at trial. As a result, Defendant did not possess the machinegun. Furthermore, in reliance and with respect to the ruling, Defendant did not directly address his lack of knowledge during trial because it was irrelevant in light of the jury instructions.

### b. *Jury Trial*

Defendant's presentation arguing against possession of the subject machinegun focused on three witnesses: 1) DEA TFO Travis Steward; 2) DEA TFO Thomas Clements; 3) Retired ATF Agent Russell King; and, 4) ATF Agent Jack Morgan. <u>Witness & Exhibit List</u>, DE 116, Page ID 560-62. Furthermore, the documentation supporting the possession defense focused on documents executed by law enforcement on the day of the search of 208 Stone Avenue and shortly thereafter.

#### i. *DEA TFO Travis Steward*

On August 10, 2023, the date of the 208 Stone Avenue search, Agent Steward was in the living room along with ATF Jack Morgan recording evidence and completing the inventory. <u>Day 1 Trial Transcript</u>, DE 121, Page ID 631-33. While in the room, Agent Morgan received the two guns found in the master bedroom. <u>Id.</u> After inspection, Agent Morgan described the firearms to Agent Stewards, who in turn recorded the description in the search inventory. <u>Id.</u>; *see also* **Exhibit**

**1** – Defense Trial Exhibit 13 – Search Inventory. Per the inventory, neither of the two firearms were described as a "machinegun" or referenced a "switch" despite having been immediately inspected by ATF Agent Jack Morgan at the scene. Id. at Page 2.

Furthermore, on August 15, 2023, Agent Steward completed a DEA 6 form regarding the subject search. **Exhibit 2** – Defense Trial Exhibit 18 – DEA 6 of August 10, 2023 Search. Again, there was no mention of a "machinegun" or "switch" within his report. Id., generally. Finally, Agent Steward testified that after the search on August 10, 2023, ATF took custody of the subject weapons. Day 1 Trial Transcript, Page 25. Furthermore, Agent Steward did not testify that he ever mentioned "machinegun" or "switch" at the scene. Day 1 Trial Transcript, DE 121, Page ID Pages 610-641.

### ii. *Retired ATF Agent Russell King*

Retired ATF Agent Russell King discovered the two weapons in the master bedroom, including the machinegun. **Exhibit 3** – Defense Trial Exhibit 11 – Pictures of Weapons in Bedroom. Picture 1 is the machinegun in the dresser and Picture 3 shows Agent King placing the machinegun at the bottom right-hand corner of the bed. Id. During his cross-examination, Agent King acknowledged that Defendant's Exhibit 12 accurately reflected the machinegun when he found it in the dresser. **Exhibit 4** – Defense Trial Exhibit 12 – Picture of back of machinegun; *see also* Day 1 Trial Transcript, DE 121, Page ID 700. Furthermore, King admitted he never uttered the word "machinegun" or "switch" at the scene. Id. at Page ID 701.

### iii. *ATF Agent Jack Morgan*

While in the living room, Agent Morgan acknowledged that DEA TFO Thomas Clements brought the firearms in the bedroom to him for processing, including the machinegun. Day 2 Trial Transcript, DE 122, Page ID 806. Thereafter, Agent Morgan inspected the weapons and described

them to DEA TFO Steward for the search inventory. Id. at Page ID 807. At that time, despite the inspection, Agent Morgan did not know the weapons included a machinegun. Id. at Page ID 808.

After Agent Morgan took custody of the machinegun, he testified about its chain of custody. On or about August 17, 2023, the machinegun was removed from the ATF evidence locker and Agent Morgan, and others, conducted a "NIBIN" test on the weapon. Id. at Page ID 809-810; *see also* **Exhibit 5** – Machinegun Chain of Custody, Page 1. During these tests, Agent Morgan, and/or others, purportedly remove tape from the back of the machinegun and discarded the tape. Id. In his November 3, 2023 report subsequent to discarding the tape during NIBIN testing, Agent Morgan admitted that his report, nor any report he prepared, referenced removing and discarding the purported tape on the back of the machinegun. Id. at Page ID 812-14; *see also* **Exhibit 6** – Defense Trial Exhibit 20 - November 2, 2023 ATF Report, generally. In fact, the government's gun expert, John Miller, had no clue about the tape until two weeks before trial, which was well after he tested the weapon and issued his expert report on November 27, 2023. Id. at Page ID 840; *see also* **Exhibit 7** – John Miller Expert Report.

### iv. *DEA TFO Thomas Clements*

As for DEA TFO Thomas Clements, his testimony provided additional evidence in support of Defendant's possession defense. First, Agent Clements admitted Defendant never uttered the word "machinegun" or "switch" in his presence, or any others as far as he was aware. Day 1 Trial Transcript, DE 121, Page ID 686-87. Second, Agent Clements did not testify that anyone at the search scene ever uttered "machinegun," "switch," or ever recognized the subject weapon as a machinegun. Id. at Page ID 642-687.
5

### v. David Sam

At the time of his testimony at trial, Defendant was serving a ten-year federal sentence relating to drugs and guns. Day 2 Trial Transcript, DE 122, Page ID 739-41. At trial, Mr. Sam testified that two of the guns involved with this sentence included a Glock 9mm handgun and an AR-15 that he allegedly purchased from Defendant at his "house" in exchange for drugs. Id. at Page ID 742. During that same conversation when he purchased the above guns from the Defendant, Mr. Sam testified that Defendant asked if he wanted a "switch" placed on his gun. Id. at Page ID 747.

At the time of trial, Mr. Sam cooperated in another case and received a sentence reduction down to his current 10-year sentence. Id. at Page ID 751-52. Prior to his cooperation, he was looking at a mandatory minimum of 15 years. Id. at Page ID 758. However, he denied being promised anything in this matter at the time of trial. Id. at Page ID 758-59. But, given this prior experience, he did acknowledge that it was "possible" that we would get another sentence reduction by cooperating in this case. Id. at Page ID 760.

Furthermore, prior to his trial testimony, Mr. Sam gave two proffer statements to the government. Id. at Page ID 762. After questioning him regarding these statements, it was clear Mr. Sam did not have sufficient recollection about what he said during these two sessions. Id. at Page ID 762-64. However, during DEA TFO Thomas Clements rebuttal testimony, he testified that his trial testimony conflicted with his proffer statements. Id. at Page ID 772. Specifically, at trial, Mr. Sam testified that he purchased an AR-15 from Defendant yet never mentioned that during his initial proffer statement in March 2024. Id. It was only until right before trial did he ever mention to the government about purchasing an AR-15 from Defendant. Id.

### III. STANDARD OF REVIEW

#### a. *Rule 29 – Judgment of Acquittal*

FRCP 29(a) provides that the Court may enter a judgment of acquittal, after considering the evidence on its own, for any offense for which the evidence is insufficient to sustain a conviction. FRCP 29(a). The standard for measuring insufficiency "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could not have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979).

#### b. *Rule 33 – New Trial*

FRCP 33(a) states that the Court may vacate any judgment and grant a new trial if the interest of justice so requires. FRCP 33(a). "The rule does not define 'interest of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Munoz,* 605 F.3d 359, 373 (6th Cir. 2010). However, courts have found that new trials are warranted when errors impacting the presentation at evidence at trial substantially affects the rights of the accused. *United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir. 1989) (trial court granted Rule 33 motion for new trial because trial court found that certain evidence was erroneously permitted to go to the jury). In fact, Rule 33 authorizes trial courts to order a new trial even though an alleged decision "was not reversible error." *Munoz* at 374 ("interest of justice" is a "broad standard" that may be invoked even where the alleged defect "was not reversible error"); *citing United States v. Vicaria,* 12 F.3d 195, 198-99 (11th Cir. 1994); *see also United States v. Scroggins,* 379 F3d 233, 256-57 ("under certain conditions, 'a district court may grant a new trial in the interest of justice even if it does not find that a specific legal error occurred at trial.'").

## IV. ARGUMENT

### a. *Motion for Judgment of Acquittal*

In this case, a judgment of acquittal on Question 2(a) of the Jury Instructions must be entered. The evidence at trial regarding Question 2(a) can be summarized as follows:

1) Defendant never mentioned "machinegun" or "switch;"

2) No one testified that Defendant knew that the specific firearm in this case was a machinegun;

3) The only witness implying possible knowledge, David Sam, was a discredited, cooperating witness that never testified that Defendant knew the subject weapon was a machinegun;

4) No one testified that Defendant intentionally covered the back of the gun with tape or even that he was aware of the alleged tape;

5) law enforcement never mentioned "machinegun" or "switch" until months after the search;

6) the weapon found on August 10, 2023 was materially different than the one presented at trial, i.e. back of gun black v. silver;

7) the government's explanation for the material difference was one officer's testimony that he destroyed evidence and failed to mention it to anyone until weeks before trial;

8) the same government agent issued a report after destroying the evidence and failed to mention the tape incident in his report;

9) all government reports prepared on the date of the search and August 15, 2023 relating to the search never mentioned "machinegun" or "switch;" and,

10) the first report mentioning "machinegun" was Agent Morgan's report dated November 3, 2023, the same officer that destroyed the tape.

Based upon the above, no rational jury could have found Defendant had knowledge of the machinegun. The overwhelming weight of the evidence was that there was more than reasonable doubt that Defendant had no knowledge of the alleged machinegun. The only witness that addressed knowledge was David Sam, the discredited cooperating witness.

Even still, he never testified that Defendant knew the subject machinegun had a switch. In fact, he provided zero testimony regarding Defendant this specific firearm. The only evidence he provided was that he had a general conversation with Defendant sometime before August 10, 2023 about selling a firearm with a switch on it. That testimony was uncorroborated. In comparison, there is significant evidence showing lack of knowledge as detailed above. Therefore, the jury's verdict must be vacated and an acquittal entered on Question 2(a) of the Jury Verdict.

### b. Motion for New Trial

In the alternative, Defendant should be granted a new trial because Defendant's due process rights under the Fifth Amendment Due Process Clause[1] and Sixth Amendment Compulsory Clause[2] were substantially prejudiced at trial. Due process rights are established within both the Fifth and Fourteenth Amendments. *Dusenbery v. United States,* 534 U.S. 161, 167 (2002). The only distinction between them is that the Fifth Amendment applies to federal actors wherein the

---

[1] "No person shall be . . . deprived of life, liberty, or property, without due process of law."
[2] In all criminal prosecutions, the accused shall enjoy the right to . . . have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

9

Fourteenth Amendment applies to state actors. *Id.* Whether rooted in due process "or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Ky,* 476 US 683, 690 (1986); *see also Adams v. United States ex rel. McCann,* 317 U.S. 269, 275 (1942) ("Certain safeguards are essential to criminal justice … The accused must have ample opportunity to meet the case of the prosecution."); *see also Chambers v. Miss.,* 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."); *see also Wilson v. Hawaii,* 145 S.Ct. 18, 23 (2024) ("But under the Constitution and our precedents, it is this Court's role to ensure that "criminal defendants [enjoy] a meaningful opportunity to present a complete defense."). This right includes:

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, ***the right to present the defendant's version of the facts*** as well as the prosecution's to the jury ***so it may decide where the truth lies***. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, ***he has the right to present his own witnesses to establish a defense***. This right is a fundamental element of due process law."
> *Washington v. Texas,* 388 U.S. 14, 19 (1967).

Based upon the above, the Fifth and Sixth Amendment, cumulatively, entitle the Defendant the right to a meaningful opportunity to present a "complete defense" to defend against criminal charges. This includes the right to present his version of the facts and present his own witnesses

10

to establish a defense. Those rights were substantially prejudiced when the jury instructions were materially changed after the close of evidence.

Specifically, based upon the Court's pre-trial ruling, the issue of Defendant's knowledge of the machinegun was deemed irrelevant. As a result, Defendant presented the possession defense previously described because it conformed to the Court's ruling on knowledge. Additionally, Defendant did not focus on his lack of knowledge regarding the machinegun because it was deemed irrelevant.

However, if the Court had come to its final decision within a reasonable time before trial, Defendant would have done several things differently. First, he likely would have testified that he had no knowledge of the machinegun or switch. Second, Defendant would not have pursued the "possession" defense nor focus so much Agent Morgan and the tape issue. In terms of trial strategy, aggressively attacking a law enforcement officer and his candor is a risky proposition given the public's general appreciation for law enforcement. If knowledge was required, Defendant would not have taken the aggressive line against Agent Morgan. Instead, Defendant would have laser focused on the knowledge issue when cross-examining the other witnesses at trial alongside Defendant's own trial testimony.

As a result, Defendant's substantive trial rights under the Fifth & Sixth Amendment were substantially prejudiced. Even if the above circumstances are not legally sufficient to find due process violations, Rule 33 authorizes a Court to order a new trial under the lower "interest of justice" standard. At least, these circumstances warrant a new trial as it did not provide Defendant a fair opportunity to put on the case he would have but for the change in jury instructions. Therefore, a new trial must be ordered.

## V. CONCLUSION

**WHEREFORE,** Defendant, Keith Stallworth, through counsel, moves this Court for Judgment of Acquittal under Rule 29 on Question 2(a) or, in the alternative, a new trial under Rule 33.

Respectfully submitted,

TRUE GUARNIERI AYER, LLP
124 Clinton Street
Frankfort, Kentucky 40601
Phone: (502) 605-9900
Fax: (502) 605-9901
plawson@truelawky.com

*/s/ Philip C. Lawson*
PHILIP C. LAWSON
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Motion has been served this the 1st day of October 2025 by filing same via the CM/ECF System, which will send electronic notice to all counsel of record.

*/s/ Philip C. Lawson*
ATTORNEY FOR DEFENDANT